IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Lumumba K. Incumaa, # 155651,<br>a/k/a Theodore Harrison, Jr., ` | ) | CIVIL ACTION NO. 9:12-3493-CMC-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Honorable William R. Byars, Jr., as | ) | |
| Director of the SCDC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA). Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges that his rights are being violated by the Defendant Director of the Department of Corrections, because of restraints placed on Plaintiff's exercise of his religion or religious beliefs by the SCDC.

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on July 16, 2013. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on July 18, 2013, advising Plaintiff of the importance of a motion for summary judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendant's motion may be granted, thereby ending his case. Plaintiff thereafter filed a memorandum in opposition to the Defendant's motion on August 5, 2013. The Defendant filed a reply memorandum on August 31, 2013, following which Plaintiff field a supplemental affidavit on September 11, 2013.



Defendant's motion is now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in his verified Complaint[2] that the SCDC's designation of his religion (Nation of Gods and Earths) as a Security Threat Group (STG) is imposing a substantial burden on his exercise of his religious beliefs "because it forces me to choose between the exercise of my religion or the abandonment (renouncing) of my religion". Plaintiff complains he is being held in administrative segregation, and that the SCDC's policy requires that he must renounce his religion in exchange for release from administrative segregation to the general population, which in addition to being a violation of his religious rights is also a violation of his liberty interests protected by the United States Constitution. Plaintiff also alleges his due process rights are being violated by his continued confinement in administrative segregation.

Plaintiff alleges that he has grieved this prison policy through the prison grievance system (both Step 1 and Step 2),[3] as well as through an appeal to the South Carolina Administrative

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991). .

[3]This Court can take judicial notice from previous cases filed in this Court that, under the SCDC Grievance Procedure, all inmate grievances must be filed within fifteen (15) days of the alleged incident, and if the grievance is denied by the Warden (Step 1), the inmate may then appeal the Warden's decision by filing a Step 2 appeal with the Division Director of Operations. See Aloe Creme Laboratories, Inc. v. Francine Co, 425 F.2d 1295, 1296 (5th Cir. 1970); see also Branton v. Ozmint, No. 08-2306, 2009 WL 1457144 at * 2 (D.S.C. May 22, 2009); Jenkins v. South Carolina Dept. of Corrections, No. 05-2800, 2006 WL 1083563 at * 5 (D.S.C. Apr. 18, 2006). Accordingly, before Plaintiff may proceed on his claims in this Court, he must first have exhausted the
(continued...)



Law Court, all of which have been denied and dismissed.  Plaintiff has attached copies of his Step 1 and Step 2 Grievance forms to his Complaint as exhibits.  The decision contained in Plaintiff's Step 2 Grievance reads as follows:

> The Five Percenters[4] group is a Security Threat Group (STG) and is not recognized as a separate religious denomination.  You have been informed on what procedures you must follow to be considered from the Special Management Unit (SMU), to include renouncing you affiliation with this Security Threat Group (STG).  You have not been denied your right to practice your religion as you are listed as a Muslim, you are allowed to pray in your cell and to have possession of your Koran.  Therefore, your grievance is denied.

<u>See</u> Exhibit to Complaint [Step 2 Grievance Form].

Plaintiff alleges his constitutional right to the free exercise of his religion is being violated by the Defendant's policy, and that this policy is placing a substantial burden on Plaintiff's exercise of his religion and is not the least restrictive means to further the compelling governmental interest which is put forward to justify it, thereby also violating the RLUIPA.  Plaintiff seeks declaratory and/or injunctive relief.  <u>See</u> <u>generally</u>, <u>Verified Complaint</u>, with attached Exhibits.

Subsequent to the filing of his Complaint, Plaintiff submitted a "brief" in support of his Complaint with an attached affidavit and numerous attached exhibits.  In his affidavit, Plaintiff attests that he has been a member of the Five Percenters for many years.  Plaintiff attests that the Five Percenters was founded on October 10, 1964 and is a "God centered culture of Islam".  Plaintiff goes on to discuss the beliefs of the Five Percenters, and states that the foundational text of the Five

---

[3](...continued)
administrative remedies that were available to him at the prison.

[4]The Five Percenters, also known as the Nation of Gods and Earths, has been designated an STG since 1995.  <u>See</u> <u>In re Long Term Administrative Segregation of Inmates Designated as Five Percenters</u>, 174 F.3d 464, 469 (4th Cir. 1999).



Percenters is the Book of Life, a copy of which (handwritten) is attached to his affidavit as Exhibit A. Plaintiff attests that the Book of Life contains the Supreme Mathematics and Supreme Alphabets created by Allah to be used to unlock the secret hidden within all mysteries of life. The Book also contains the "120 Degrees", which are lost-found Muslim lessons. See also, Exhibit B to Plaintiff's affidavit. Plaintiff attests that the Holy Bible and the Koran are also important texts which Five Percenters study. Plaintiff attests that Five Percenters do not worship Allah; rather, they emulate Allah and his way of righteousness.

Plaintiff attests that as a member of the Five Percenters, he is required to live life in a wise, just and righteous way; always dress in a clean, modest and civilized way; follow a strict dietary law and restrictions; and abstain from lying, stealing, cheating, murder and other immoral acts. Plaintiff attests that as a Five Percenter he daily studies the Book of Life in order to gain more understanding and comprehension of his divine nature. Five Percenters also practice the god centered culture of Islam by attending civilization class once a week, Cipher once a week, universal parliament on the last Sunday of each month, and observe the honor days of the Five Percenters.[5] Plaintiff attests that the special clothing Five Percenters are supposed to wear include a crown for men similar to a Muslim kufi, and special clothing and a head wrap for women.

Plaintiff attests that since 1995 the SCDC has promulgated a policy which has designated Five Percenters as an STG within the SCDC, but asserts that Five Percenters are the equivalent to any mainstream religion in America. See also, attached Exhibit C to Plaintiff's Affidavit [Affidavit of Ted Swedenburg, Professor of Anthropology and Middle East Studies,

---

[5]The Five Percenter honor days are February 22 (Father's Day), June 13, the last Saturday in August, and October 10. See Plaintiff's Affidavit, ¶ 28.

4





submitted in December 2008, in the case of <u>Hardaway v. Haggarty,</u> United States District Court for the Eastern District of Michigan].  Plaintiff attests that Five Percenters do not teach anyone to be a criminal and do not condone or encourage criminal or violent behavior, but that because he is a member of the Five Percenters he has been confined in administrative segregation since 1995 as he refuses to renounce his membership in the Five Percenters.

Plaintiff attests that this is a "punitive" confinement, as inmates in the SMU are confined to their cells 24 hours a day on non-recreation and non-shower days, that he is allowed recreation only two or three days a week, that he is only allowed to shower three times a week, that he is strip searched anytime he leaves his cell, that he receives smaller portions of food compared to that which is served in the general prison population and is required to eat all meals in his cell, that his personal and legal property is limited to what can fit in his possession box, that he is denied canteen privileges, opportunity for work assignments, and educational and vocational opportunities, and is denied the opportunity to receive mental health treatment because prisoners confined in the SMU are not allowed to attend any mental health groups or meet privately with counselors or psychiatrists.  Plaintiff further attests that his STG status has not been reviewed formally or informally since he was placed in administrative segregation, and that he has never personally appeared before any board and/or committee to review his confinement status.  <u>See</u> <u>generally</u>, <u>Plaintiff Affidavit</u>, with attached Exhibits (Court Docket No. 21-1 and 2).

In support of summary judgment in the case, the Defendant has submitted an affidavit from Elbert Pearson, an investigator with the Special Investigations Unit of the SCDC.  Pearson attests that his duties include the investigation of STGs and STG members under the authority of SCDC Policy No. OP-22-01 [Security Threat Groups].  Pearson attests that STGs are groups that

have been designated by the Defendant to be a threat to the security of correctional institutions within the SCDC system, and that one group that has been designated as an STG is the Nation of Gods and Earths, commonly referred to as the Five Percenters. Pearson attests that Five Percenters have been a constant threat to the security of correctional institutions in South Carolina because of their zealous members and organized activities, including organized violence towards correctional officers and other inmates. Pearson attests that these activities precipitated the designation of the Five Percenters as an STG group, and that the historical background and basis for designating the Five Percenters as an STG are discussed in the Fourth Circuit's decision in <u>In re Long Term Administrative Segregation of Inmates Designated as Five Percenters</u>, <u>supra</u>.

Pearson further attests that the Five Percenters have been recognized nationally as a known STG, including by the Department of Homeland Security as well as by other state correctional systems. Pearson attests that Five Percenters are not a religion; they are a gang - a hate group that teaches a racist ideology, specifically black supremacy. In fact, Pearson attests, Five Percenters specifically disavow connection to a religion or that the group is a religion or religious organization; rather, they are a "culture" or "way of life". Pearson has attached to this affidavit as Exhibit A a copy of the Five Percenter newspaper from November 1995 which contains the headline "We Are <u>Not</u> A Religion".

Pearson attests that since 1995 members of the Five Percenters have continued to engage in unlawful activity within the SCDC, including members who remain on lockup in Validated-SD status. Pearson attests that since 1995 members of the Five Percenters have been convicted of numerous major disciplinary offenses of violence and other disruptive conduct within the SCDC, including assaultive behavior against staff, threats to inflict harm on staff, possession of



weapons and inciting or creating a disturbance. Pearson attests that the Five Percenters group remains designated as an STG for this reason, and in an attempt to address and control to the extent possible the known possible propensities of this group.

Pearson attests that once an individual has been deemed a suspected member of an STG, the Special Investigations Unit goes through a rigorous investigation of that individual to see if the individual can be validated as an STG member, and that in order to be validated, the individual must exhibit at least two validating factors. The investigator, that investigator's supervisor, and the SIU Branch Chief must then all sign off on the validation of the individual. Once an individual has been validated, that individual will receive one of two classifications, either Validated-GP or Validated-SD. If an individual has been validated as an STG member but has not committed or been implicated in any disciplinary infractions for STG activities, that individual would typically, although not always, receive a classification of Validated-GP and be allowed to remain in the general population, although they would be closely monitored. However, if an individual has been validated as an STG member and has committed disciplinary infractions and/or participated in STG activities, that individual would typically receive a classification of Validated-SD, and be placed in the SMU for the protection of SCDC staff and other inmates. Further, once a validated STG member has been classified as Validated-SD, that individual remains in the SMU until that individual is released following a rigorous review of his or her classification status, that individual renounces his or her affiliation as an STG member, or the group to which that individual has been validated is removed from the STG list.

Pearson attests that in order for an individual to renounce his or her membership in an STG, they must fill out a detailed questionnaire about why he or she wants to renounce



membership, following which the questionnaire is reviewed and the individual's sincerity is evaluated. A renunciation committee is then assembled and the individual is interviewed by the committee members provided the questionnaire shows the individual to be sincere in his or her desire to renounce. The committee then makes a recommendation about the sincerity of the individual's renunciation and forwards their recommendation to the Warden, following which the Warden must sign off on the committee's recommendation in order for the individual to be able be released from SD status. If the Warden signs off on the committee's recommendation, the renunciation packet is then forwarded to the Special Investigations Unit for a final review. Pearson attests that the Special Investigations Unit must sign off on the renunciation packet in order for the individual to be released from SD status. Even then, that individual is still monitored and can be reclassified or re-validated if they are implicated in STG activities or is found to be in possession of STG literature or paraphernalia.

Pearson attests that he is familiar with the Plaintiff, who was formerly known as Theodore Harrison. Pearson attests that Plaintiff is designated as a Five Percenter and has been classified as Validated-SD and assigned to the SMU. Pearson attests that, as discussed by the Fourth Circuit in Five Percenters, several violent events occurred in SCDC facilities in 1995 including a riot by Five Percenters at the Broad River Institution where the inmates attacked several correctional officers and took hostages. Pearson attests that Plaintiff was one of the Five Percenters who participated in that riot and hostage taking, and that following an investigation of the Plaintiff and his validation as an STG member, he has been housed either in the Maximum Security Unit (MSU)



or the SMU[6] since 1996 and remains classified as a Validated-SD.  Pearson notes that Plaintiff has not disputed that he is a Five Percenter, nor has he made any request to renounce.

Pearson further attests that because the Five Percenters have been designated as an STG, Five Percenter literature, writings and other related information have been declared to be contraband within the SCDC, and as a result no person who has not been designated and identified as a member of the Five Percenters may possess Five Percenter literature, writings, and other related information, nor are validated Five Percenters in the general population allowed to possess any such written literature or materials of the group or permitted to engage in STG activities or attempt to recruit other members.  However, with respect to inmates that are confirmed STG members who are confined in the SMU, Pearson attests that there is a process for allowing STG materials to be returned to these inmates.  Pearson attests that when a validated STG member complies with that process, the STG materials are returned to that inmate's personal property and may be possessed by him, subject only to system-wide limitations on the quantity of personal property allowed in the SMU.

Pearson attests that if an inmate has been confirmed as an STG member and confined to the SMU and has requested the return and/or possession of STG materials, then that inmate is required to sign a form stating he is a member of the particular STG and that the inmate wishes to have the materials and literature of his STG while in the SMU.  This form specifically states that if

---

[6]The SCDC maintains two specialized housing units.  The Special Management Unit ("SMU") is for prisoners requiring greater monitoring and supervision than the general prison population.  The Maximum Security Unit ("MSU") is a "supermax" facility and is a specialized housing unit for inmates who have demonstrated an unwillingness to conform to the rules and regulations of the SMU.  Malik v. Ozmint, No. 05-3472, 2010 WL 1052660, at * 3, n. 4 (D.S.C. March 19, 2010).  In April 1995, Plaintiff was placed in the MSU, and was subsequently released to the SMU in 2005.  Incumaa v. Ozmint, 507 F.3d 281, 283 (4th Cir. 2007).



the material or literature is found outside of the inmate's cell, it will be confiscated as contraband and not returned.  The inmate is also given the option of mailing the materials out of the institution. Pearson attests that pursuant to this process any suspected STG material will be sent to his office, where it is reviewed to determine whether or not it is the type of material that can be possessed by the inmate.  The material is stamped with the inmate's SCDC identification number at that time. Pearson attests that once the material has been stamped and approved, and the inmate has signed the form, the inmate can have access to the materials in accordance with the applicable SMU policies.

Pearson attests that this process is designed to allow the Department to identify and maintain control of STG materials which are considered contraband, while allowing access to the materials by a confirmed STG member within his own SMU cell for his own use, but also allowing the Department to restrict access to such materials and to prevent unauthorized persons from obtaining access.  Pearson attests that, because of Plaintiff's Validated-SD status, he is permitted to possess Five Percenter literature within his own SMU cell and for his own use.  See generally, Pearson Affidavit, with attached Exhibit.

The Defendant has also submitted an affidavit from Sandra Bowie, who attests that she is the Branch Chief over Policy Development for the SCDC.  Bowie has attached a true and correct copy of the current version of SCDC Policy No. OP-22.12 [Special Management Unit] issued September 1, 2012, to her affidavit as Exhibit A.  See generally, Bowie Affidavit, with attached Exhibit.

The Defendant has also submitted an affidavit from Michael Stobbe, who attests that he is the Branch Chief of Records Management and Release in the Inmate Records Division, where his duties include overseeing the central records for all SCDC inmates.  Stobbe attests that Plaintiff

10



has his custody status reviewed by the SMU Classification Committee Review Board every thirty days. Stobbe has attached to his affidavit as an exhibit a true and correct copy of the completed SCDC Form 18-68 [Staff Memoranda] for the Plaintiff showing the dates of these monthly reviews. See Stobbe Affidavit, with attached Exhibit.

As an attachment to his response in opposition to summary judgment, Plaintiff has submitted a second affidavit wherein (in addition to making arguments as to why Five Percenters should not be considered a dangerous organization) Plaintiff attests that Five Percenters are not a "gang" or a hate group and that its members work with white people in a variety of occupations. Plaintiff also complains that, while Pearson states in his affidavit that since 1995 members of the Five Percenters have continued to engage in unlawful activity within the SCDC, he presented no evidence to support that statement. With respect to Stobbe's statement in his affidavit that Plaintiff's custody status is reviewed by the SMU Classification Committee Review Board every thirty (30) days, Plaintiff attests that he has never been before an SMU Classification Committee Review Board for review of his custody status, and that he just receives a form (SCDC Form 19-30) that Plaintiff says is just someone repeatedly writing the same thing over and over again. Plaintiff has also attached copies of some Five Percenter newsletters, and a copy of the publication "The Cream City". See, Plaintiff's Second Affidavit, with attached exhibits.

As an attachment to his reply brief, and in response to Plaintiff's complaint that Pearson presented no evidence to support his statement that Five Percenters continue to engage in unlawful activities, the Defendant has submitted a supplemental affidavit from Elbert Pearson in which Pearson again attests that since 1995 Five Percenters have been involved in acts of violence and other disruptive conduct within the SCDC, including assaultive behavior against staff, threats

11



to inflict harm on staff, possession of weapons, and inciting or creating a disturbance.  Pearson has attached to this supplemental affidavit as Exhibit A a chart showing the number of assaults involving Five Percenters since 2003, which include assaults on both other inmates and assaults on employees. The attached exhibit [Chart] reflects that there have been 491 assaults in which Five Percenters were involved within the SCDC since 2003.  Pearson further attests that although this chart shows that assaults continue to be committed by Five Percenters, the number of incidents appear to be trending downward because (in Pearson's view) the Department's STG policy has been and continues to be effective.  Pearson attest that the SCDC has been successful in identifying the validated Five Percenters who have engaged in assaultive and other criminal conduct within the general population, reclassifying them as Validated-SDs, and committing them to security detention where they are subject to greater control and observation.  Pearson attests that the STG Policy and its application with respect to the Five Percenters has successfully reduced the overall number of assaults.  <u>See generally, Pearson Supplemental Affidavit</u>, with attached Exhibit.

Finally, Plaintiff filed yet another affidavit with the Court on September 11, 2013, in which he argues that the least restrictive means of implementing the Defendant's policy is to only remove an inmate from the general population after they commit a violent, disruptive and/or criminal act within the SCDC.  Plaintiff also continues to argue that being required to first renounce his allegiance to the Five Percenters prior to being considered for release from confinement in the SMU violates his rights under both the Constitution and the RLUIPA, and argues that some other state corrections departments, in particular those in New York, New Jersey, Massachusetts, and Michigan, do not even designate Five Percenters as a Security Threat Group.  <u>See generally, Plaintiff's Affidavit</u> (Court Docket No. 36).



## <u>Discussion</u>

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Rule 56, Fed.R.Civ.P.  The moving party has the burden of proving that judgment on the pleadings is appropriate.  <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991).  Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial.  <u>Baber v. Hosp. Corp. of Am.</u>, 977 F.2d 872, 874-75 (4th Cir. 1992).  Further, while the Federal Court is charged with liberally construing a complaint filed by a <u>pro se</u> litigant to allow the development of a potentially meritorious case, <u>see Cruz v. Beto</u>, 405 U.S. 319 (1972); <u>Haines v. Kerner</u>, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists.  <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).  Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes for the reasons set forth hereinbelow that the Defendant is entitled to summary judgment in this case.

## I.

### (Constitutional Claim)

First, to the extent Plaintiff asserts that his continued confinement in the SMU violates his constitutional rights, this claim is without merit.  Plaintiff does not deny that he is a Five Percenter, and the Fourth Circuit in <u>Five Percenters</u> has already held that the SCDC's STG policy

13



is constitutional, and that the designation of the Five Percenters as an STG is rationally related to the legitimate objective of penal security, concluding that there was "ample evidence in the record supporting the reasonableness of [the Director's] conclusion that the Five Percenters as a group posed a threat to prison safety." Five Percenters, 174 F.3d at 469-470. Plaintiff has pointed to no evidence to show a material change in the Defendant's STG policy since Five Percenters, or to any change in the belief's and practices of the Five Percenters. Therefore, Plaintiff has not shown a genuine issue exists as to whether the Defendant's STG policy and the fact that the Five Percenters have been found subject to that policy have resulted in a constitutional violation.

With respect to Plaintiff's free exercise claim, the Fourth Circuit has further already held that, notwithstanding their STG status, other avenues remain available for Five Percenters to exercise their religious practices,[7] even in high security confinement, as they "remain free to pray, fast, and study religious material". Id., at 470. The fact that inmates are unable to participate in group meetings under these circumstances, as Plaintiff clearly wishes to do, was not found to be unconstitutional. Id. The Fourth Circuit has also already concluded that further accommodation of the Five Percenters' asserted rights would be at too high a cost, and that there are no ready alternatives to the SCDC's course of action. Id. Therefore, Plaintiff's assertion that the Defendant's

---

[7]The undersigned has assumed for purposes of summary judgment only that the Five Percenters are a religion. Cf. Five Percenters, 174 F.3d at 468 [Declining for purposes of that decision to engage in the "difficult and delicate task" of examining the nature and sincerity of the inmates' professed beliefs, and assuming for purposes of that decision that Five Percenters are a religious group entitled to First Amendment protection]; cf. also, Coward v. Jabe, No. 13-6060, 2013 WL 3359260 (4th Cir. July 5, 2013); Versatile v. Johnson, 474 Fed.Appx. 385 (4th Cir. 2012), aff'm. 2011 WL 5119259 (E.D.Va. Oct. 27, 2011), cert. denied, 133 S.Ct. 1261 (2013). This assumption does not represent a finding by this Court, and the Defendant remains free to contest any designation of the Five Percenters as a "religion" for purposes of a free exercise claim, if he chooses to do so.



implementation of the policy at issue is itself unconstitutional is without merit.[8]

        Plaintiff has also failed to submit evidence sufficient to create a genuine issue of fact that this policy *as applied to him* violates his constitutional rights.  Plaintiff argues in his last affidavit that, rather than maintaining him in administrative segregation, a less restrictive means of implementing the Defendant's policy would be to only place inmate's in segregation after they have committed violent, disruptive and/or criminal acts within the SCDC, and that therefore he should be released from segregation.  This argument fails for two reasons.  First, this is what Pearson in his affidavit states the Department is already doing, a policy and practice which he contends has led to the downward trend in the number of assaults committed by Five Percenters.  Hence, the Defendant is already practicing the "least restrictive means" of implementing this policy that Plaintiff suggests.  However, Pearson also attests in his affidavit that Plaintiff  was one of the Five Percenters who participated in the riot and hostage taking which led to the creation and implementation of the policy at issue.  Therefore, this "least restrictive means" of implementing the policy that Plaintiff cites to has already been applied *to him* - that is why he is in the SMU.  Second, even if the evidence did not show that this is the reason Plaintiff was placed in administrative segregation, the Fourth Circuit has rejected the argument that Five Percenters should only be segregated *after* an individual assessment of a particular inmate's dangerousness has been made, finding that "[a]llowing prison officials to act only after a demonstration of individual dangerousness would deprive them of the all-important

---

    [8]While Plaintiff argues that there are some other jurisdictions which do not consider Five Percenters to be a Security Threat Group, that is not a basis for relief as, as noted hereinabove, the Fourth Circuit has already determined that the SCDC's classification of Five Percenters as a Security Threat Group passes constitutional muster, and Plaintiff has presented no evidence to show any material change in the nature and beliefs of the Five Percenter organization to call that precedent, which is binding on this Court, into question.



option of prevention." <u>Five Percenters</u>, 174 F.3d at 470; <u>cf</u>. <u>Fraise v. Terhune</u>, 283 F.3d 506, 518 (3d Cir. 2002)["Demanding proof [that members of the Five Percenters are required to engage in violence or hard statistics to show that members have committed more violent acts] before correctional officers can act to prevent gang violence is fundamentally inconsistent with <u>Turner</u>[9] and would in all likelihood be paralyzing."].

      With respect to Plaintiff's additional argument that his right to free exercise is being violated by the Defendant's policy requiring him to renounce his affiliation with the Five Percenters before he can be released from segregation, the Fourth Circuit has also already upheld this policy, finding that "[i]f the SCDC wishes to hinge [the decision of whether it is safe to return an inmate to the general population] on the renunciation of affiliation with a violent - albeit assertively religious - group, it may do so". <u>Id</u>., at 471. This Court is not require to re-visit or re-analyze this issue a second time. <u>Cf</u>. <u>Aloe Creme Laboratories, Inc. v. Francine Co.</u>, 425 F.2d 1295, 1296 (5th Cir. 1970). ["The District Court clearly had the right to take notice of its own files and records and it had no duty to grind the same corn a second time. Once was sufficient."]

      As for the conditions under which Plaintiff is being held, in <u>Five Percenters</u> the Fourth Circuit found that the conditions imposed on long-term segregated confinement inmates, including specifically those conditions cited to by the Plaintiff in his evidence, do not violate the Eighth Amendment, concluding that "the isolation inherent in administrative segregation or maximum custody is not itself constitutionally objectionable", and that while the other conditions objected to (such as restrictions on out of cell exercise, inability to participate in prison work, school or study programs, and the like), while restrictive, did not alone constitute cruel and unusual punishment. <u>Id</u>.,

---

[9]<u>Turner v. Safley</u>, 482 U.S. 78 (1987).



at 471-472. Further, while it is self evident that Plaintiff has been in some form of heightened security status for a long time, that is not the fault of the Defendant. Rather, it is as a direct result of Plaintiff's own actions and conduct. The Fourth Circuit has held that the indefinite duration of Five Percenters' segregation does not render it unconstitutional as long as there is no evidence that the Defendant is being deliberately indifferent to a serious basic human need, and since the conditions under which Plaintiff is being held have already been found to meet constitutional muster, the indefinite duration of his security status alone is not in itself evidence sufficient to create a genuine issue of fact of a constitutional violation. Id., at 472. Shelby v. Caruso, No. 09-152, 2010 WL 3892209 at * 1 (W.D.Mich. Aug. 20, 2010)[No liberty interest sufficient to support a Fourteenth Amendment claim was shown where Plaintiff, who had been in administrative segregation for over 12 years, had timely review procedures applied to determine whether his continued confinement in administrative segregation was appropriate], adopted by, 2010 WL 3852350 (W.D.Mich. Sept. 29, 2010]; see also Sandin v. Connor, 515 U.S. 472, 478 (1995)[The "Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner"]; Slezak v. Evatt, 21 F.3d 590 (4th Cir. 1994) [the Constitution vests no liberty interest in inmates retaining or receiving any particular security or custody status as long as the conditions or degree of confinement is within the sentence imposed]; Neal v. Shimoda, 131 F.3d 818, 828 (9th Cir. 1997) ["[A] prisoner does not have a constitutional right to be housed at a particular institution,..., [or] to receive a particular security classification...."]; Beverati v. Smith, 120 F.3d 500 (4th Cir. 1997) [Inmate's confinement in Administrative Segregation does not impose such an atypical hardship so as to implicate a liberty interest]; Jones v. Walker, 358 Fed. Appx. 708, 712 (7th Cir. 2009)[Inmates do not have a liberty interest in avoiding placement in discretionary segregation,



meaning "segregation" imposed for administrative, protective, or investigative purposes]; cf Weens

v Lawrence, No. 09-65, 2009 WL 2422795 at * * 2-3 (S.D.Ga. Aug. 6, 2009)[shackling pre-trial

detainee during exercise did not violate Fourteenth Amendment]; Ruffino v. Lawrence, No. 08-1521,

2010 WL 908993 at * 5 (D.Conn. Mar. 9, 2010)[citing numerous cases upholding inmates being

required to wear restraints during exercise and finding no contrary decisions]; Chavis v. Fairman,

No. 94-1503, 1995 WL 156599 at * * 5-6 (7th Cir. Apr. 6, 1995)["Generally, even dramatic

restrictions on outdoor exercise do not violate [the due process clause] so long as prisoners have

ample opportunity to enjoy indoor activity."]; Peckham v. Wisconsin Dep't of Corrections, 141 F.3d

694 (7th Cir. 1998) [strip searches constitutional absent evidence they were performed for purposes

of harassment or punishment]; Franklin v. Lockhart, 883 F.2d 654 (9th Cir. 1989) [approving twice-a-

day visual body cavity searches for inmates in disciplinary and administrative segregation];

Michenfelder v. Sumner, 860 F.2d 328, 332-333 (9th Cir. 1988) [strip searches when entering and

leaving cells not excessive even if prisoner escorted from one portion of a unit to the next]; Cosco

v. Uphoff, 195 F.3d 1221, 1224 n. 3 (10th Cir. 1999)[Noting that an inmate has no property interest

in his or her prison job]; James v. Jackson, No. 08-144, 2009 WL 291162, at * 8 (D.S.C. Feb. 4,

2009); Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) ["[A] prison inmate does not have a

protectable liberty or property interest in his custodial classification and an inmate's disagreement

with a classification is insufficient to establish a constitutional violation."]; Rodgers v. Shearidin,

Nos. 09-1962 & 10-3110, 2011 WL 4459092 at * 7 (D.Md. Sept. 22, 2011)["Restricting group

meetings may be necessary to prevent the possibility of riots or gang meetings."].

      Finally, Plaintiff's complaint about the nature of the classification review he is

receiving also fails to state a constitutional claim.  The Defendant has submitted evidence to show

18



that Plaintiff's custody status is reviewed approximately every thirty (30) days. Plaintiff has presented no evidence to show that this review is not taking place; rather, he simply complains that this review process is insufficient and that he is entitled to a hearing before he can continue to be held. That is not the standard for a due process claim under these circumstances. Cf. Mitchell v. D.O.C., No 12-92, 2013 WL 311440 at * 4 (M.D.La. Jan. 25, 2013)[No due process rights implicated by Defendant's actions in conducting periodic reviews of his custody status] Rollins v. Cain, No. 07-463, 2009 WL 1146455 at * 3 (M.D.La. Apr. 27, 2009)[Plaintiff's claim that his due process rights were violated during periodic reviews of his custody status are barred by Sandin v. Conner, supra].

 Rather, the question is whether Plaintiff's retention in administrative segregation under the facts presented in this case gives rise to a genuine issue of fact as to whether the Defendant's actions are arbitrary and capricious or constitute a clear abuse of discretion. Cf. Marchesani v. McCune, 531 F.2d 459, 462 (10th Cir. 1976), cert. denied, 429 U.S. 846 (1976)[classification generally upheld unless inmate proves arbitrary and capricious or a clear abuse of discretion]; Crowe v. Leeke, 259 S.E.2d 614, 615 (1979). Plaintiff has presented no such evidence in this case. To the contrary, the evidence before the Court shows that Plaintiff was involved in a riot and hostage taking which initially led his assignment to security detention in the high security MSU. Plaintiff has since been transferred to the less restrictive SMU, where he concedes he continues to be a Five Percenter and a strict adherent to its beliefs and practices, and that he has refused to renounce his association with this STG. Cf. Cromer v. Braman, No. 07-009, 2009 WL 806919 at * 2 - 3 (W.D.Mich. Mar. 25, 2009)[Finding that Plaintiff's security classification, which resulted from his designation as an STG because of his affiliation with the "Five Percenters", was not arbitrary and was related to legitimate security concerns].

19



There is no evidence before the Court to show that Plaintiff's classification as a Validated-SD assigned to the SMU is arbitrary and capricious or is based on an abuse of discretion by the Defendant. Therefore, this claim is without merit.

## II.

### (RLUIPA Claim)

Plaintiff has also asserted his claim in this case pursuant to the RLUIPA, which is analyzed under a different standard than that of an Eighth Amendment claim. The RLUIPA provides that no government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution unless the government demonstrates that imposition of the burden on that person 1) is in furtherance of a compelling governmental interest, and 2) is the least restrictive means of furthering that compelling governmental interest. See 2 U.S.C. § 2000cc-1(a). The RLUIPA requires a "more searching standard of review . . . than the standard used in parallel constitutional claims: strict scrutiny instead of reasonableness". Loveless v. Lee, 472 F.3d 174, 186 (4th Cir. 2006) (internal quotation marks omitted).

The first question, then, is whether the policy at issue "substantially burdens" the exercise of Plaintiff's religious rights. Here, Plaintiff complains that because of his SMU status he is only permitted to possess Five Percenters literature and materials, and is not allowed to observe any of the Five Percenters' "honor days", during which Five Percenters gather in congregation with other Five Percenters to recite lessons, give speeches and sing songs, followed by a feast. See Plaintiff's Affidavit (Court Docket No. 36), ¶¶ 24-26. It is certainly arguable that the Defendant's policy of allowing Plaintiff to possess religious materials and otherwise exercise the beliefs and practices of his purported religion, except for the rituals of the Five Percenters' "honor" days, does



not impose a "substantial burden" on Plaintiff's exercise of his religious beliefs. Cutter v. Wilkinson, 544 U.S. 709, 720 (2005) [RLUIPA's institutionalized persons provisions was intended to alleviate only "exceptional" burdens on religious exercise]; cf. Nicholas v. Ozmint, No. 04-22471, 2006 WL 895017 (D.S.C. Mar. 31, 2006) [No substantial burden found where, although plaintiff was not allowed unlimited number of religious texts, plaintiff could possess the central book of his faith], aff'd, 2006 WL 3057360 (4th Cir. Oct. 26, 2006); Lyng v. Northwest Indian Cemetery Protective Ass'n, 485 U.S. 439, 450-451 (1988) [A government regulation does not substantially burden religious activity when it only has an incidental effect that makes it more difficult to practice the religion]; Baranowski v. Hort, 486 F.3d 112, 124-125 (5th Cir. 2007)[Refusal to allow Jewish inmates to congregate when rabbi or outside volunteer was not present, was not a substantial burden]; Countryman v. Palmer, No. 11-852, 2012 WL 4340659 at * 4 (D.Nev. Aug. 7, 2012)(citing Adkins v. Kasper, 393 F.3d 559 (5th Cir. 2009), cert. denied, 125 S.Ct. 2549 (2005)[Held prison did not place substantial burden on Plaintiff's request to congregate with other members of his faith when no outside volunteer was present].  However, at least for purposes of the Defendant's summary judgment motion, the undersigned concludes that the Defendant's policy restricting Plaintiff from engaging in the Five Percenters' honor day rituals as well as the requirement that Plaintiff, in effect, renounce his religion in order to get out of administrative segregation, is sufficient to create a genuine issue of fact as to whether a substantial burden has been placed on Plaintiff's exercise of his religious beliefs.  See Coleman v. Jabe, 2012 WL 7801722, at * 6 ["[T]he Fourth Circuit has held that a 'substantial burden' on religious exercise occurs when a state or local government, through act or omission, puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.  The Fourth Circuit [has] further held that in assessing whether a substantial burden on



religious exercise exists for purposes of RLUIPA, courts must not judge the significance of the particular belief or practice in question"] (internal citations omitted); <u>cf</u>. <u>Newby v. Quarterman</u>, 325 Fed.Appx. 345, 351 (5th Cir. 2009)[Question of fact whether ban on chapel use without an outside volunteer present was a substantial burden].  Therefore, the Defendant is not entitled to summary judgment on Plaintiff's RLUIPA claim on that basis.

   Having determined for purposes of summary judgment that the Defendant's policy does place a substantial burden on Plaintiff's exercise of his religious beliefs, the burden shifts to the Defendant to demonstrate that the policy at issue is in furtherance of a compelling governmental interest, and is the least restrictive means of furthering that compelling governmental interest. <u>Versatile v. Johnson</u>, No. 09-120, 2011 WL 5119259, * 4 (E.D.Va. Oct. 27, 2011)[Once a substantial burden is shown, the burden is on the defendant to show the practice at issue is the least restrictive means of furthering a compelling governmental interest], <u>aff'd by</u>, 474 Fed. Appx. 385 (4th Cir. 2012), <u>cert</u>. <u>denied</u>, 113 S.Ct. 1261 (2013).  Here, the Fourth Circuit Court of Appeals has already found in <u>Five Percenters</u> that the SCDC policy at issue in this case is in furtherance of a compelling governmental interest.[10]  <u>Five Percenters</u>, 174 F.3d at 469 [Finding that the reasons behind the challenged SCDC policy "are not simply legitimate penological interests - they are compelling"]. Although <u>Five Percenters</u> involved a constitutional challenge to the SCDC policy relating to this group, and was not an evaluation of this policy under the "strict scrutiny" standard of the RLUIPA, the fact remains that the Fourth Circuit in <u>Five Percenters</u> has already concluded that the Department of Corrections has a "compelling" penological interest in fashioning and implementing the policy

---

   [10]Although <u>Five Percenters</u> addressed the claims of the Five Percenters in that case under the constitutional standard of the Eighth Amendment, not under the standard of an RLUIPA claim, this finding by the Court in <u>Five Percenters'</u> is still material to Plaintiff's RLUIPA claim.



at issue relating to the Five Percenters group. Furthermore, Pearson's supplemental affidavit reiterates the security concerns still at issue here and the continuing nature of those concerns with regard to Five Percenters and the security risks presented by them. Therefore, the subject policy meets the first prong of the RLUIPA two prong test.

As for whether the compelling governmental interests furthered by the Defendant's STG policy is being implemented in the least restrictive means available, the facts and evidence again show that the Defendant has met his burden on this issue. As a Validated-SD of a recognized STG who has refused to renounce his allegiance, and support of, the practices of the Five Percenters, and as a participant in a prior riot and hostage taking event perpetrated by members of that organization, Plaintiff has been assigned to the SMU, which is a heightened security designation. However, even though in administrative segregation, Plaintiff by his own testimony is allowed access to the literature and materials of his faith, and other than not being allowed to participate in "honor" day activities, which would require the Defendant to allow Five Percenters to congregate together with each other, Plaintiff is otherwise allowed to practice his religious faith, which Plaintiff largely describes as educating himself, getting knowledge of himself, and living a righteous and civilized life free of "devilishment". Plaintiff's Affidavit (Court Docket No. 28-1), ¶ 10. See also, Five Percenters, 174 F.3d at 470 [Finding that even though in administrative segregation, Five Percenters "remain free to pray, fast, and study religious material"]. Allowing Five Percenters, particularly those held in administrative segregation, to congregate together would impose an administrative and security nightmare on prison officials, and in its review of the policy at issue in this case, the Fourth Circuit has already found that "there are no ready alternatives to the SCDC's course of action". Five Percenters, 174 F.3d at 470; see also Rodgers, 2011 WL 4459092 at * 7 ["Restricting group meetings



may be necessary to prevent the possibility of riots or gang meetings."]; <u>Jones v. Roth</u>, 950 F.Supp.

254, 257 (N.D.Ill. 1996); <u>cf</u>. <u>Johnson Bey v. Lane</u>, 863 F.2d 1308 (7th Cir. 1988)[Regulation

prohibiting inmates from conducting their own religious services permissible].

        The reviewing court must not substitute "its judgment in place of the experience and

expertise of prison officials." <u>Hoevenaar v. Lazaroff</u>, 422 F.3d 366, 370 (6th Cir. 2006). As the

United States Supreme Court held in <u>Cutter v. Wilkerson</u>,

> We do not read RLUIPA to elevate accommodation of religious observances over an
> institution's need to maintain order and safety. Our decisions indicate that an
> accommodation must be measured so that it does not override other significant
> interests . . . . [Congress] anticipated that courts would apply the Act's standard with
> "due deference to the experience and expertise of prison and jail administrators in
> establishing necessary regulations and procedures to maintain good order, security
> and discipline, consistant with consideration of cost and limited resources." . . .

<u>Cutter</u>, 544 U.S. at 722.

The Defendant's policy of not allowing SMU Five Percenters to congregate together for "honor

days" rituals is in compliance with this standard. Indeed, as already noted, Plaintiff's lone suggestion

of a less restrictive means of implementing the policy at issue is a process that both he and Pearson

in his affidavit state is already being used; i.e., identifying the validated Five Percenters who have

engaged in assaultive and other criminal conduct within the general population, reclassifying them

as Validated-SDs, and committing those inmates to security detention where they are subject to

greater control and observation. See <u>Pearson Supplemental Affidavit</u>, ¶ 3; <u>Plaintiff's Affidavit</u>

(Court Docket No. 36), at ¶ ¶ 3-7. This process is exactly the process that has been applied to the

Plaintiff.         Therefore, as the Defendant has met his burden of showing that the policy at

issue is in furtherance of a compelling governmental interest and is the least restrictive means of

furthering that compelling governmental interest, he is entitled to summary judgment on Plaintiff's

24



RLUIPA claim.

## Conclusion

Based on the forgoing, it is recommended that the Defendant's motion for summary judgment be **granted,** and that this case be dismissed.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

September 24, 2013
Charleston, South Carolina

25



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29401

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

